# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID M. POARCH; R. BRETT KRAMER, individually and as trustee of the R. Brett Kramer Trust B; and PJ OIL LLC, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIT CORPORATION,<br><br>Defendant. | Case No. CIV-23-798-PRW<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs David M. Poarch, R. Brett Kramer, individually and as trustee of the R. Brett Kramer Trust B, and PJ Oil LLC ("**Plaintiffs**"), for themselves and on behalf of all others similarly situated, hereby allege as follows:

## NATURE OF THE COMPLAINT

1.  This is a class action against Unit Corporation ("**Defendant**") for its breach of its confirmed chapter 11 bankruptcy plan of reorganization, which under applicable law is recognized as a contract between Defendant and its creditors, shareholders and other plan beneficiaries.

2.  As detailed herein, in exchange for broad general releases of Defendant, its management and others contained in Defendant's bankruptcy plan (which called for cancellation of common stock held by Plaintiffs and members of the Plaintiff Class (as

defined herein)), Defendant agreed to issue to Plaintiffs and members of the Plaintiff Class warrants to purchase new common stock to be issued under Defendant's bankruptcy plan.

3. The warrants were to be issued pursuant to a form of warrant agreement which was presented to and approved by the Bankruptcy Court, and which induced and served as consideration for the releases described above. That form of warrant agreement approved by the Bankruptcy Court contained language meant to protect warrant holders against, among other things, dilution and other adverse impact in the event Defendant were to issue cash dividends after its emergence from chapter 11.

4. After confirmation of Defendant's bankruptcy plan and approval of the form of warrant agreement, Defendant modified the form of warrant agreement to remove the anti-dilution and other protective language contained in the form of warrant agreement, and issued warrants to Plaintiffs and members of the Plaintiff Class pursuant to the modified warrant agreement. Defendant failed to present such modification to the Bankruptcy Court, and never sought Bankruptcy Court approval of such modification, as required by section 1127(b) of the Bankruptcy Code. Nor did Defendant otherwise seek the approval of Plaintiffs and members of the Plaintiff Class of such modification.

5. As a result, Defendant remains bound by the original form of warrant agreement approved by the Bankruptcy Court as part of the bankruptcy plan.

6. As detailed herein, Defendant has failed to issue warrants to Plaintiffs and members of the Plaintiff Class as promised under its bankruptcy plan. Plaintiff has issued over $100 million in dividends, and has failed to adjust the warrants that were issued on account of such dividends. Defendant has thereby deprived Plaintiffs and the members of

the Plaintiff Class of the value they bargained for under the bankruptcy plan, has breached the bankruptcy plan, and has caused Plaintiffs and members of the Plaintiff Class to suffer injury and damage.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1334(b).

8. Venue properly lies in this District pursuant to 18 U.S.C. § 1391(b)(1) because Defendant is subject to personal jurisdiction in this District and therefore resides in this District.

## PARTIES

9. Plaintiff David M. Poarch is an individual and a resident of Oklahoma. Mr. Poarch brings this action individually and on behalf of all others similarly situated.

10. Plaintiff R. Brett Kramer is an individual and a resident of Oklahoma. Mr. Kramer brings this action in his individual capacity and as trustee of the R. Brett Kramer Trust B, and on behalf of all others similarly situated.

11. Plaintiff PJ Oil LLC is a limited liability company located in Tulsa, Oklahoma. Plaintiff PJ Oil LLC brings this action individually and on behalf of all others similarly situated.

12. Defendant Unit Corporation is a corporation organized and existing under the laws of Delaware, has its headquarters and principal place of business in Tulsa, Oklahoma, and conducts business in this district.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

13. On May 22, 2020 (the "**Bankruptcy Petition Date**"), Defendant and several affiliates voluntarily filed respective petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**").

14. The respective chapter 11 cases of Defendant and its affiliates were thereafter jointly administered under case number 20-32740 (DRJ) (the "**Bankruptcy Case**").

15. On June 19, 2020, Defendant and its affiliated debtors filed their *First Revised Proposed Joint Chapter 11 Plan of Reorganization* (the "**First Revised Plan**").

16. Broadly speaking, the First Revised Plan called for, among other things, Defendant to complete a debt-for-equity exchange with the holders of Defendant's 6.625% senior subordinated notes (the "**Subordinated Notes**").

17. The First Revised Plan called for equity interests in the Defendant (defined as "**Unit Corp. Interests**") existing as of the "Effective Date" of the Plan to be extinguished, and for Defendant to issue 12 million shares of new common stock, of which 95% were to be issued to holders of Subordinated Notes, and 5% of which were to be issued to Defendant's lenders under an exit financing facility.

18. The First Revised Plan included various provisions purporting to release Defendant, Defendant's management and various other parties, from a broad range of claims and liabilities (the "**Releases**"); provided, however, that holders of Unit Corp. Interests were to be given the opportunity to affirmatively "opt out" of being bound by the

4

Releases by timely returning a "Release Opt-Out Form" in accordance with solicitation procedures and deadlines to be established by the Bankruptcy Court.

19. Under the First Modified Plan, those holders of Unit Corp. Interests who did not opt out of the Releases were to receive a *pro rata* share of a "Warrant Package," defined as:

> Out-of-the-money warrants governed by the Warrant Agreement exercisable for an aggregate of 12.5.% of the Reorganized Unit Corp. Equity Pool with a maturity of 7 years and a strike price equal to an implied 100% recovery to Holders of the Subordinated Notes . . . [including] a cashless exercise option and other terms customary for similar transactions (but excluding Black Scholes or other similar protections).

20. The terms of the Warrant Package were to be governed by a "Warrant Agreement," the substantially final form of which was to be filed with the Bankruptcy Court as part of a "**Plan Supplement**" prior to the deadline for submitting the Release Opt-Out Form.

21. On June 19, 2020, the Bankruptcy Court issued an Order, which, among other things, set an August 6, 2020 hearing to consider approval and confirmation of the First Revised Plan, and established various solicitation procedures and deadlines (including a July 31, 2020 deadline to return a Release Opt-Out Form) in connection the Debtor's effort to obtain Bankruptcy Court confirmation of the First Revised Plan.

22. Defendant filed the first Plan Supplement (the "**First Plan Supplement**") with the Bankruptcy Court on July 22, 2020, which included what the First Revised Plan defined as "[a] substantially final form of Warrant Agreement," (hereinafter the "**Form of**

5

**Warrant Agreement**") and which was incorporated into the First Revised Plan by reference.

23.     On August 3, 2020, Defendant filed with the Bankruptcy Court *Debtors' Amended Joint Chapter 11 Plan of Reorganization* (hereinafter, the "**Plan**"), which included the provisions of the First Modified Plan discussed above, and which incorporated the First Plan Supplement as filed on July 22, 2020, as well as a "Second Plan Supplement" which had been filed on July 31, 2020.

24.     By Order dated August 6, 2020 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the Plan pursuant to section 1129 of the Bankruptcy Code, apparently including a "Third Plan Supplement" filed that same day.

25.     On September 2, 2020, Defendant filed a Fourth Plan Supplement (together with the Second Plan Supplement and Third Plan Supplement, the "**Subsequent Plan Supplements**").  The Subsequent Plan Supplements appear to have, among other things, modified certain documents that were included in the First Plan Supplement, but the Subsequent Amendments did not modify the Form of Warrant Agreement included in the First Plan Supplement.  The First Plan Supplement and the Subsequent Plan Supplements are hereinafter collectively referred to as the Plan Supplement.

26.     On September 3, 2020, Defendant filed with the Bankruptcy Court a notice that the Effective Date of the Plan occurred on September 3, 2020.

27.     On September 10, 2020, Defendant made a filing with the U.S. Securities and Exchange Commission, which filing included a warrant agreement (the "**Executed**

6

**Warrant Agreement**") dated as of September 3, 2020, which Defendant had executed purportedly pursuant to the Plan and Confirmation Order.

28. However, the Executed Warrant Agreement was markedly and materially different than the Form of Warrant Agreement which had been approved by Bankruptcy Court as part of the Plan, and which served as consideration which Plaintiffs exchanged for the Releases under the Plan.

29. Specifically, Section 4.8 of the Form of Warrant Agreement addressed events which would give rise to the need to adjust the terms of the warrants to be issued "in order to avoid an adverse impact on the [w]arrants, *including a distribution to holders of Common Stock of cash . . . .*" (emphasis added).

30. In the Executed Warrant Agreement, the anti-dilution language emphasized above was unilaterally removed, and the following emphasized language was added: ". . . provided, however, under no circumstances shall the [w]arrants be adjusted pursuant to this Section 4 as a result of any issuances of securities in connection with . . . *(v) a dividend or distribution to holders of Common Stock of cash, property or securities (other than Common Stock) . . . .*"

31. Notwithstanding that Defendant had found it necessary and/or appropriate to file the Subsequent Plan Supplements, including the Fourth Plan Supplement only one day before the Executed Warrant Agreement is said to have become effective and the Effective Date is said to have occurred, Defendant did not bring to the attention of the Bankruptcy Court, Plaintiffs or any members of the Plaintiff Class, the fact that material adverse changes were to be made to the Form of Warrant Agreement.

32. Following execution and delivery of the Executed Warrant Agreement, warrants (the "**Warrants**") were issued to former Unit Corp. Interest holders, including Plaintiffs and members of the Plaintiff Class, pursuant to the Executed Warrant Agreement.

33. In or about January, 2023, Defendant paid a special dividend of $10.00 per share (the "**Special Dividend**") to holders of Defendant's common stock, and Defendant likewise paid a quarterly dividend of $2.50 per common share in or about June, 2023. Defendant has publicly announced its intent to pay a dividend of $2.50 per common share in the third quarter of 2023, as well as a dividend of $2.50 per common share in the fourth quarter of 2023. Those dividends paid by Defendant, and which may be paid by Defendant, after the Effective Date are hereinafter jointly, severally and collectively referred to as "**Dividends**."

34. Defendant has not taken any action to adjust the terms of the Warrants on account of the Dividends, as contemplated by the Form of Warrant Agreement.

35. The payment of Dividends by Defendant has diluted and devalued the Warrants to an extent that would not have occurred had Defendant adjusted the terms of the Warrants as contemplated by the Form of Warrant Agreement.

**Class Action Allegations.**

36. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), on behalf of the following proposed class: all original recipients of Warrants who continued to hold Warrants as of the date Defendant publicly announced that the Special Dividend was to be paid (the "**Plaintiff Class**").

37. A class action is a superior means, and the only practicable means, by which the named Plaintiffs and Plaintiff Class members can challenge the Defendant's breach of contract described herein.

38. The Plaintiff Class is so numerous that joinder of all members is not practicable. Among other things, Defendant's stock was publicly traded prior to the Effective Date, and, upon information and belief, there are currently in excess of 1.8 million Warrants issued and outstanding. While the exact number of Plaintiff Class members is unknown to Plaintiffs at this time, and can only be obtained through appropriate discovery, Plaintiffs believe there are at least hundreds, if not thousands, of members of the proposed Plaintiff Class. Members of the Class may be identified from records maintained Defendant or its transfer agent, and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

39. Plaintiffs' claims are typical of the claims of the members of the proposed Plaintiff Class as all members of the Plaintiff Class are similarly affected by Defendants' wrongful conduct complained of herein. There are questions of law or fact that are common to the Plaintiff Class, and the relief sought is common to all members of the Plaintiff Class. Common legal and factual questions arise from Defendant's failure to issue warrants pursuant to the Form of Warrant Agreement approved by the Bankruptcy Court as part of the Plan, and as bargained for by the Plaintiff Class in exchange for the Releases.

40. The claims and defenses of the representative parties are typical of the claims and defenses of the Plaintiff Class. All Plaintiff Class members have the same claims, *i.e.*, that the Defendant is liable for breach of the Plan, which breach has adversely impacted

upon the value they were to receive under the Plan, and thus caused them injury and damage. If the named Plaintiffs succeed on their claims, that ruling will likewise benefit every other member of the Plaintiff Class. Any defenses that Defendant raises are also likely to be raised equally against all of the named Plaintiffs and the Plaintiff Class.

41. The representative parties and their attorneys will fairly and adequately assert and protect the interests of the Plaintiff Class. The named Plaintiffs are represented by Webber McGill LLC and Barber & Bartz, P.C., two law firms that together have experience litigating class action claims, and cases relating to claims of the type at issue herein. These two law firms also have detailed knowledge of the Defendants' conduct at issue and the applicable law, and together they have done substantial work in identifying and investigating the potential claims in the action, already collectively spending significant time on this case to date. These two law firms have the resources necessary to represent the Class, and they will commit those resources to this case.

42. Plaintiffs have no interests antagonistic to or in conflict with those of the Class, and do not have a conflict of interest in the maintenance of a class action, and they have or can acquire adequate financial resources to assure that the interests of the Plaintiff Class will not be harmed.

43. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, and joinder of all members is impracticable. The principal legal and factual questions in this case, involving whether Defendant breached its contract

with the Plaintiff Class, are common to all Plaintiff Class members. Once that questions are answered in the affirmative, all that will be required is a mechanical calculation of damages owed to each Plaintiff Class member. The size of the Plaintiff Class, and the minimal difficulties likely to be encountered in the management of the action as a class action, further support the conclusion that this case should be maintained as a class action. The Plaintiff Class members in individually controlling the prosecution of separate actions. There is no other litigation already commenced by or against members of the Class involving any the same issues raised herein. Moreover, it is desirable to concentrate the litigation of the claim(s) raised herein in this particular forum because, among other reasons, Defendant resides in this District, and it is likely that one or more Class members resides in this District. The size of the Plaintiff Class, and the minimal difficulties likely to be encountered in the management of the action as a class action, further support the conclusion that this case should be maintained as a class action.

## COUNT I
### (Breach of Contract)

44.    Plaintiff repeats and realleges each of the paragraphs above as if fully set forth herein.

45.    The Plan, including the Plan Supplement, as confirmed by the Bankruptcy Court by virtue of the Confirmation Order, constitutes, among other things, a legally binding contract between Defendant and the various Plan counterparties and beneficiaries, including Plaintiffs and the Plaintiff Class.

46. Although Defendant submitted to the Bankruptcy Court the Subsequent Plan Supplements, none of the Subsequent Plan Supplements, nor any other submissions to the Bankruptcy Court, modified, or sought permission to modify, the Form of Warrant Agreement contained in the Plan Supplement.

47. Under the terms of the Plan, and applicable law, modification of the Form of Warrant Agreement was an attempted modification of the Plan itself.

48. Section 1127(b) of the Bankruptcy Code addresses plan modifications after confirmation, and provides in pertinent part that "[s]uch plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title." *See 11 U.S.C. § 1127(b)*.

49. Apart from the fact that no circumstances warranted the material and adverse modification of the Form of Warrant Agreement, particularly given that a substantial number of Unit Corp. Interest holders had agreed to the Releases, there was no notice and no hearing. Indeed, neither the Executed Warrant Agreement nor form of Executed Warrant Agreement was ever submitted to the Bankruptcy Court.

50. The only plan approved and confirmed by the Bankruptcy Court is the Plan, which calls for the execution of the Form of Warrant Agreement; the Bankruptcy Court did not confirm a plan calling for, or allowing, execution of the Executed Warrant Agreement.

51. Defendant Unit Corp. has failed to issue warrants to Unit Corp. Interest holders pursuant to the Form of Warrant Agreement.

52. By virtue of its failure to issue warrants to Unit Corp. Interest holders pursuant to the form of Warrant Agreement, Defendant Unit Corp. has breached the terms of the Plan.

53. Defendant's failure to issue warrants pursuant to the Form of Warrant Agreement, and failure to adjust the value of the Warrants on account of dividends, has deprived Plaintiffs and the members of the Plaintiff Class of the value they bargained for under the Plan, and has caused Plaintiffs and members of the Plaintiff Class to suffer injury and damage.

54. Plaintiffs are not in default of any obligations under the Plan, to the extent they have any such obligations.

## JURY DEMAND

55. Plaintiffs, on behalf of themselves and the Plaintiff Class, hereby demand a jury on all claims so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs seek relief and demand judgment against Defendant as follows:

A. Determining that this action may proceed as a class action, pursuant to Fed. R. Civ. P. 23;

B. Designating Plaintiffs as the class representatives for the Plaintiff Class;

C. Designating Webber McGill LLC and Barber & Bartz, P.C. as counsel for the Plaintiff Class;

D. Ordering Defendant to pay Plaintiffs and the Plaintiff Class damages for all injuries Plaintiffs and members of the Plaintiff Class have suffered as a result of Defendant's breach of its obligations to them;

E. Awarding Plaintiffs and the Plaintiff Class attorneys' fees, costs and disbursements incurred as a result of this action;

F. Ordering Defendant to specifically perform its obligations under the Form of Warrant Agreement; and

G. Granting Plaintiffs and the Plaintiff Class such other and further relief as the Court deems just and proper.

Dated: September 11, 2023

        **BARBER & BARTZ, P.C.**

        /s/ Robert J. Bartz
        Robert J. Bartz, OBA #580
        525 S. Main Street, Suite 800
        Tulsa, Oklahoma 74103-4511
        Telephone: (918) 599-7755
        Facsimile: (918) 599-7756
        Email: rbartz@barberbartz.com

        -and-

        **WEBBER MCGILL LLC**
        Douglas J. McGill*
        100 E. Hanover Avenue, Suite 401
        Cedar Knolls, New Jersey 07927
        Tel: (973) 739-9559
        Fax: (973) 739-9575
        dmcgill@webbermcgill.com

        **ATTORNEYS FOR PLAINTIFFS**

*Pro hac vice application forthcoming*