United States District Court
Southern District of Texas
**ENTERED**
March 31, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re UNIT PETROLEUM COMPANY, | § | |
| | § | |
| Debtor. | § | |
| | § | CIVIL ACTION NO. 4:24-CV-4109 |
| | § | |
| UNIT CORPORATION, | § | BANKRUPTCY CASE NO. 20-32738 |
| | § | |
| Appellant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal challenging the bankruptcy court's interpretation of its own order confirming a Chapter 11 reorganization plan. The Court will **AFFIRM** the bankruptcy court's ruling.

### I.   BACKGROUND

The issue raised in this appeal is whether a lawsuit brought by Appellees ("the Oklahoma Plaintiffs")[1] in the Western District of Oklahoma ("the Oklahoma litigation") is barred by the release and injunction provisions (respectively, "the release" and "the injunction") of Appellant Unit Corporation's ("Unit") Chapter 11 reorganization plan ("the plan") and the bankruptcy court's order confirming it ("the confirmation order"). In the Oklahoma litigation, the Oklahoma Plaintiffs allege that they represent a class of former Unit stockholders who released certain claims against Unit in exchange for warrants to

---

[1] The Oklahoma plaintiffs are David M. Poarch; R. Brett Kramer, individually and as trustee of the R. Brett Kramer Trust B; and PJ Oil LLC.

1 / 6

EXHIBIT A

purchase new common stock that was to be issued under Unit's bankruptcy plan. (ROA at pp. 33–34).[2]

According to the Oklahoma Plaintiffs, the "form of [the] warrant agreement approved by the Bankruptcy Court contained language meant to protect warrant holders against, among other things, dilution and other adverse impact in the event [Unit] were to issue cash dividends after its emergence from chapter 11." (ROA at p. 34). Specifically, the approved warrant agreement form required Unit "to adjust the terms of the Warrants" in the event Unit issued a cash dividend. (ROA at p. 40). However, Unit issued a cash dividend without making the required adjustments to the terms of the warrants, an action which the Oklahoma Plaintiffs claim "has diluted and devalued the Warrants to an extent that would not have occurred had [Unit] adjusted the terms of the Warrants as contemplated by the [approved warrant agreement form]." (ROA at p. 40). The Oklahoma Plaintiffs have sued Unit in the Oklahoma litigation for injunctive relief under 11 U.S.C. § 1127(b) and for breach of contract. (ROA at pp. 44–47).

In response to the Oklahoma litigation, Unit filed a motion in the bankruptcy court seeking an order "enforcing" the confirmation order and requiring the Oklahoma Plaintiffs "to immediately dismiss" the Oklahoma litigation. (Dkt. 3-3 at pp. 20–21). In its motion, Unit argued that the Oklahoma litigation is barred by the release and the injunction. (Dkt. 3-3 at p. 21).

---

[2] The appellate record in this case is located at docket entry 3 and its attachments. However, some of the headers contained in docket entry 3 and its attachments are illegible, so when necessary the Court has cited to the Bates number located in the bottom right-hand corner of the cited page. Bates number citations begin with "ROA."

As well summarized by Unit in its brief, the release broadly shields Unit from:

> …any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever… based on or relating to, or in any manner arising from, in whole or in part… the purchase, sale, or rescission of the purchase or sale of any Security of [Unit Corporation], the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan… or any Restructuring, contract, instrument, document, release, or other agreement or document… created or entered into in connection with the… the Plan, the Plan Supplement… the related agreements, instruments, and other documents… the Chapter 11 cases… the pursuit of Confirmation… the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan… or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Dkt. 4 at p. 10; ROA at pp. 158–59.

However, the release, by its own terms, has limits; it does not bar claims arising from "post-Effective Date obligations of any party or entity under the Plan, including any such obligations created in connection with the Restructuring[.]" (ROA at p. 159). Moreover, the release does not bar "any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of [a] Released Party's gross negligence, knowing and intentional fraud, or willful misconduct." (ROA at p. 159). Similarly, the injunction permits claims brought "to enforce the terms of the Plan or [any] document, instrument, or agreement . . . executed to implement the Plan." (ROA at p. 161).

After receiving full briefing and hearing oral argument, the bankruptcy court concluded that:

The claims and causes of action alleged by Plaintiffs in *Poarch et al. v. Unit Corporation*, Case No. 23-cv-00798-PRW in the United States District Court for the Western District of Oklahoma ("**Oklahoma Litigation**") were not released under the *Amended Joint Chapter 11 Plan of Reorganization* (Docket No. 320) or the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Joint Chapter 11 Plan of Reorganization* (Docket No. 340). The Chapter 11 Plan and the Confirmation Order also do not bar or enjoin Plaintiffs from proceeding with the Oklahoma Litigation before the United States District Court for the Western District of Oklahoma.

Dkt. 3-4 at p. 118.

Unit then filed this appeal.

## II.   APPLICABLE LAW

An appeal to a federal district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court "interprets the terms of a bankruptcy reorganization plan and confirmation order *de novo* and holistically." *In re Davis Offshore, L.P.*, 644 F.3d 259, 263 (5th Cir. 2011). If terms in the plan are ambiguous, then the Court "owe[s] deference to [the] bankruptcy court's reasonable interpretation of [the] ambiguous terms[.]" *Id.*

In this case, the plan provides that it is governed by New York law. *See* Southern District of Texas bankruptcy case number 20-32740 at docket entry 320, page 31 and docket entry 340, page 107. "Under New York law, a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001). "A release will not be given effect unless it contains an explicit, unequivocal statement of a present promise to release a party from liability." *Id.* (quotation marks and brackets omitted). "Moreover, because the law looks with disfavor upon agreements intended to absolve a party from the consequences of

his wrongdoing, a release which purports to excuse a party from responsibility for misconduct is subject to the closest of judicial scrutiny." *Id.* (quotation marks and brackets omitted).

### III.   ANALYSIS

The Court concludes that the bankruptcy court did not err in holding that the release does not bar the Oklahoma litigation. On this record, the Court cannot say that the release contains an explicit, unequivocal statement of a present promise to release Unit from the claims brought in the Oklahoma litigation.

The release and the injunction expressly permit: (1) claims arising from "post-Effective Date obligations of any party or entity under the Plan, including any such obligations created in connection with the Restructuring;" (2) "any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of [a] Released Party's gross negligence, knowing and intentional fraud, or willful misconduct[;]" and (3) claims brought "to enforce the terms of the Plan or [any] document, instrument, or agreement . . . executed to implement the Plan." (ROA at pp. 159, 161). The Oklahoma Plaintiffs argued to the bankruptcy court that the Oklahoma litigation involves claims arising from Unit's "post-Effective Date obligations" created by "the plan itself"—claims, in other words, that were explicitly excluded by the release. *See* Southern District of Texas bankruptcy case number 20-32728 at docket entry 166, page 4. The bankruptcy court agreed.

Unit contends that the bankruptcy court erred because the Oklahoma litigation is actually "a collateral attack on specific terms of the Plan and Confirmation Order[.]" (Dkt. 4 at p. 20). The "specific terms" to which Unit refers gave Unit the ability "to revise the

form of [the] warrant agreement after confirmation and before the Effective Date." (Dkt. 4 at p. 20). Unit argues that, since the plan allowed it to revise the form of the warrant agreement to remove the Oklahoma Plaintiffs' protection against dilution, the Oklahoma Plaintiffs cannot prove a violation of the plan and must in actuality be mounting an attack on the terms of the plan that allowed such a revision. (Dkt. 4 at p. 20). The Court respectfully disagrees. To reiterate, the Oklahoma litigation alleges that Unit failed to comply with post-effective-date obligations that were created by the plan. Unit's responsive contention—that the plan permitted the modification Unit made—can possibly be used to defend against the Oklahoma Plaintiffs' claims on the merits, but it cannot be employed to recast the Oklahoma litigation in a manner that brings it within the scope of the release. *See id.* ("A release will not be given effect unless it contains an explicit, unequivocal statement of a present promise to release a party from liability.") (quotation marks and brackets omitted).

## IV.   CONCLUSION

The Court concludes that the bankruptcy court did not err in holding that the release does not bar the Oklahoma litigation. Accordingly, the Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas on March 31, 2026.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE